2007 OK CIV APP 109

**REDWINE RESOURCES, INC., Plaintiff/Appellant,**

v.

**PREDATOR TECHNOLOGIES, L.L.C., Defendant/Appellee.**

No. 104,218.

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 12, 2007.

Brian R. McLaughlin, McLaughlin and Associates, P.C., Stigler, OK, for Plaintiff/Appellant.

John E. Lee, III, Wright & Associates, P.C., Edmond, OK, for Defendant/Appellee.

## OPINION

ADAMS, Judge.

¶ 1 Plaintiff Redwine Resources, Inc. appeals separate trial court orders in its breach of contract action against Predator Technologies, L.L.C. In the first order, the trial court denied Redwine's motion for a temporary injunction to enjoin Predator from pursuing arbitration in Texas concerning their dispute about drilling services on a well in Haskell County, Oklahoma. The second order granted Predator's motion for an order to compel arbitration and to stay proceedings and overruled Redwine's second motion for a tempo-

rary injunction.[1] We conclude the first order is moot because the question of arbitration, which was the object of the requested injunctive relief, was subsequently decided on the merits. Based on the undisputed facts in this case, we reverse the second order.

## Standard of Review

■ ¶2 An application for a temporary injunction is addressed to the trial court's discretion and its ruling will not be disturbed on appeal absent a clear showing of error, either legal or factual, or an abuse of discretion. On appeal we are bound neither by the reasoning of the trial court nor by its findings, but we may examine, consider and weigh all the evidence. *Sharp v. 251st Street Landfill, Inc.*, 1991 OK 41, 810 P.2d 1270, overruled on other grounds, *DuLaney v. Oklahoma State Department of Health*, 1993 OK 113, 868 P.2d 676.

■ ¶3 Under the proceedings governing applications to compel arbitration, the existence of an agreement to arbitrate is a question of law. Questions of law are reviewed *de novo* and without deference to the lower court. *Bruner v. Timberlane Manor Ltd. Partnership*, 2006 OK 90, 155 P.3d 16; *Rogers v. Dell Computer Corporation*, 2005 OK 51, 138 P.3d 826. It is under these standards we review the decisions of the trial court.

## Facts

¶4 The following facts are undisputed. Redwine is a corporation located in Dallas, Texas, with offices operating and doing business in Haskell County, Oklahoma. Predator is a Louisiana limited liability corporation domiciled in Houston, Texas. After Redwine filed for a joint drilling permit for several wells in Haskell County, its engineer, John Burke, was contacted by Predator's representative in April of 2006 to inquire if he would accept a proposal from Predator for directional drilling on a well. Mr. Burke gave his approval. Prior to the end of that same month, Predator's representative presented its Proposal for Directional Drilling for the Fowler 3–H–7 (the Well) to Mr. Burke. During that five minute meeting, Burke informed Predator's representative that "they weren't going to do the work" because Redwine "had contracted with Scientific Drilling out of Oklahoma City to do the work, and that [he] would keep his name and number for future reference."

¶5 Three months later, during the last week of July, Redwine had just begun moving the drilling rig into location for the Well, when Mr. Burke received a call from Scientific Drilling that it could not start drilling as planned because of some problems with other wells and equipment and personnel shortages. He explained the dilemma to Gary Redwine, Redwine's President, who decided that instead of putting the rig on standby time at a cost of $20,000 per day, Mr. Burke should try to get another company to do the work. That same day, he called Predator and spoke to its representative, Jim Overkircher, "to see if they could do the work on short notice." Mr. Overkircher agreed he could, and after discussing a similar, yet different well plan in full detail, he explained to Mr. Burke that "the costs would be a little bit more than was in ... that original proposal." Their discussion ended, and Predator began the work on the Well two days later.

¶6 Redwine filed this breach of contract action against Predator in September of 2006, alleging that due to Predator's "faulty drilling practices," *i.e.,* "drilling in the wrong direction to establish the proper curve to reach the intended reserve," the drilling equipment could not be removed from the Well and was lost, as was the intended operation of the directional well. It further claimed that as a result of Predator's "negligent and improper directional drilling ... [Redwine] has suffered damages through the

1. *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, 160 P.3d 936, recently held that an order compelling arbitration of all of the claims pressed before the district court was appealable as a final order under 12 O.S.2001 § 953. Although the Court's opinion does not mention *Ditto v. RE/MAX Preferred Properties, Inc.*, 1993 OK CIV APP 152, 861 P.2d 1004, which held a similar order compelling arbitration was not an appealable order, it is apparent that *Oklahoma Oncology* effectively overrules *Ditto*. The trial court's order here effectively compelled arbitration of both Redwine's claims and Predator's counterclaim.

cost of the improper drilling performed by [Predator], the loss of income of [the Well], as well as the possible loss of the reserve."

¶ 7 A month later, Redwine moved for a temporary restraining order and injunction seeking to enjoin Predator from pursuing arbitration in Texas. The trial court granted the restraining order until November 9, 2006, the date set for a show cause hearing for the temporary injunction. Predator filed its response opposing Redwine's temporary injunction request concurrently with its Answer and Counterclaim, seeking payment for its services and equipment and alleging that the parties had a binding and enforceable written contract with an arbitration clause [2] and that Redwine had refused its written demand to arbitrate.

¶ 8 At the hearing held on November 9, 2006, each party had one witness testify, and after argument by counsel, the trial court announced it was denying Redwine's temporary injunction based on the existence of a contract with an arbitration provision. On December 7, 2006, Predator filed a motion to settle journal entry and a motion to compel arbitration and stay proceedings, and the trial court set a hearing for both on December 20, 2006. On that date, after Redwine's president testified, the trial court filed its order denying Redwine's application for temporary injunction (the first order), and continued Predator's motion to compel arbitration to January 10, 2007.

¶ 9 On that date, Redwine filed separate motions to stay the enforcement of the December 20, 2006 Order and to obtain a temporary injunction. Two days later, the trial court filed separate orders, explaining the parties' stipulation to submit their pending motions based on the transcripts from the previous hearings and any documentary evidence properly submitted to the Court, allowing the filing of additional briefs and responses, setting a hearing for January 31, 2007, and requesting that the parties' briefs address certain issues, *i.e.*, choice of law and signature requirements for arbitration contracts. After the parties filed the requested briefs and responses, Redwine filed an appeal from the December 20, 2006 Order, identifying it as an interlocutory order appealable by right under 12 O.S.2001 § 993.[3]

¶ 10 At the scheduled hearing, no witnesses testified and the parties' counsel declined the trial court's offer for additional argument on the issues. Thereafter, the trial court announced its decision that "venue and jurisdiction are proper" and that there is no choice of law issue because there is no material difference between Texas and Oklahoma law. Based on the evidence presented, the trial court found that the parties had an agreement to arbitrate under the April Proposal,[4] granted Predator's motion for an order for arbitration and to stay the pending proceedings, and overruled Redwine's second motion for temporary injunction. The trial court's order to that effect was filed January 31, 2007. Redwine thereafter amended its

---

**2.** Paragraph 19.5 of the General Terms and Conditions attached to the April Proposal provides, in relevant part:

> Any claims, disputes or controversies arising hereunder which cannot be settled by mutual agreement between the parties hereto shall, upon written notice by one party to the other, be finally settled by arbitration in accordance with and subject to the commercial Arbitration Rules of the American Arbitration Association. All arbitration hearings shall be held in Houston, Texas.

**3.** When an order "denies a temporary or permanent injunction," 12 O.S.2001 § 993(A)(2) permits an aggrieved party to appeal such order "without awaiting the final determination in said cause."

**4.** Interpreting 15 O.S.2001 §§ 70 and 75 to mean "if a proposal is made and a party accepts the consideration offered with the proposal that a

contract is created between the parties that includes all the terms and conditions or all the obligations of that proposal," the trial court considered that: (1) the Proposal's General Terms and Conditions, paragraph 1.1 provides, in pertinent part, "[b]y engaging the services of [Predator] the customer agrees to be bound by the following General Terms and Conditions ... Unless otherwise mutually agreed these General Terms and Conditions shall remain in effect for subsequent work or projects"; (2) "[t]here was testimony ... that proposal was rejected. But it was obviously revisited by Redwine when they asked Predator to come do the work"; (3) only minor changes were made so they "were working off the original proposal"; and (4) by engaging Predator to do the work under the express language of the proposal, Redwine accepted it.

Petition in Error to include review of that order.

### Order Denying Temporary Injunction

¶ 11 Redwine's Amended Petition in Error appears to raise separate issues concerning the order denying temporary injunction filed December 20, 2006 and the order compelling arbitration filed January 31, 2007, however, the basis of each are identical, *i.e.*, the trial court erred because "[t]he testimony of all witnesses, for both parties, was clear that there was no written agreement to arbitrate." In its Brief in chief, Redwine makes the same argument for both orders under its single proposition of error. However, the sole purpose of a temporary injunction is to maintain the cause in status quo until a trial upon the merits. *Drummond v. Jeffrey*, 1937 OK 171, 65 P.2d 1212. An appeal from a temporary injunction order is moot when a trial on the merits has finally determined all the issues involved. *Bonney v. Smith*, 1942 OK 420, 132 P.2d 340. In this case, "the issues involved" in the injunctive relief request were those regarding arbitration, and the trial court has now resolved the "merits" of those issues. Therefore, we must conclude Redwine's appeal of the order denying a temporary injunction to be moot.

### Order Staying Proceeding and Compelling Arbitration

¶ 12 There is no dispute over the existence of a contract between the parties, the sole issue being *which* contract?—the April Proposal, which contains an arbitration clause, or the July oral contract. In arguing against the April Proposal, Redwine relies on "basic contract law" and Oklahoma contract statutes for its claim that there was no consent, no meeting of the minds, and no written agreement signed by the parties. It further argues Predator is seeking to enforce an arbitration clause within the April Proposal that Redwine expressly rejected upon its presentment.

¶ 13 Predator contends, relying on 15 O.S. 2001 §§ 70 and 75, that Redwine kept the April Proposal and called Predator the last week of July to do the directional drilling on the same well, which it began two days later,

and therefore, Redwine accepted the April Proposal and its arbitration clause by receipt of its benefits. As the parties' arguments demonstrate, the issue to be decided is whether Redwine accepted Predator's Proposal and thereby agreed to all of its terms, including the arbitration clause.

¶ 14 The courts will not require a party to submit a controversy to arbitration where it has not been so agreed. The issue as to the existence of an arbitration agreement presents a gateway question about whether the parties are bound by a given arbitration clause and raises a question of arbitrability for a court to decide. *See* 12 O.S.Supp.2005 § 1857; *Oklahoma Oncology & Hematology P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, 160 P.3d 936. The existence of an arbitration agreement is governed by principles of state law. *Rogers v. Dell Computer Corporation*, 2005 OK 51, 138 P.3d 826.

¶ 15 As Redwine points out, the essential elements of a contract are: (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) sufficient cause or consideration. 15 O.S.2001 § 2. Consent must be free, mutual, and communicated. 15 O.S.2001 § 51. Consent is not mutual unless the parties all agree upon the same thing in the same sense. 15 O.S.2001 § 66. It is an elementary rule of law that to constitute a contract, there must be an offer by one party and an acceptance thereof by the other party. *National Outdoor Advertising v. Kalkhurst*, 1966 OK 85, 418 P.2d 661.

¶ 16 An acceptance must be absolute and unqualified; if qualified, it is a new proposal. 15 O.S.2001 § 71. An acceptance will not bind the offeror unless it is unconditional, identical to the offer, and does not modify, delete or introduce any new terms into the offer. *Ollie v. Rainbolt*, 1983 OK 79, 669 P.2d 275.

¶ 17 In response to Redwine's rejection argument, Predator contends that the testimony of Redwine's engineer, John Burke, and Predator's President of Operations, Kirk Credeur, "belie the argument," claiming both testified that its Proposal "was accepted by Redwine and implemented by Predator with minor modifications, i.e., a slight change in

the anticipated path of the wellbore, and, the use of a 'focused' gamma ray tool as opposed to a standard gamma ray tool." Predator also points out Mr. Credeur's testimony that such "changes in the well path occur frequently as geologic information is updated, and the 'focused' gamma ray tool was an *add-on* to the Proposal, and that neither modification materially changed the Proposal." (Emphasis added.)

¶ 18 Predator's response to Redwine's rejection argument focuses on oral discussions between the parties three months *subsequent to* Redwine's undisputed rejection of the Proposal. Its argument, however, fails to consider the effect of Redwine's rejection of Predator's offer three months prior to those discussions.

¶ 19 According to *Nabob Oil Co. v. Bay State Oil & Gas Co.*, 1953 OK 59, 255 P.2d 513, once an offer is terminated by rejection it cannot be accepted thereafter so as to create a contract. The Court did recognize that the acceptance of a renewal of the offer by the offeror could support formation of a contract. An offer once rejected cannot be converted into a contract by a subsequent acceptance *unless it is renewed by the party making it.* See 17A Am.Jur.2d *Contracts* § 68. In the instant case, it is undisputed that Predator made no renewal offer after Redwine's rejection in April.

¶ 20 Absent evidence of a renewal of Predator's April Proposal which included the arbitration provision, Redwine's decision to engage Predator's services after a rejection of that offer cannot be treated as an acceptance of the terms of the April Proposal including the arbitration provision, and the trial court erred in so concluding.[5] The trial court's order compelling arbitration and staying the proceedings, based on Redwine's alleged acceptance of the April Proposal, must be reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED

JOPLIN, P.J., and MITCHELL, V.C.J., concur.

---

**5.** Predator did not argue in the trial court or on appeal that the subsequent conversations resulted in a contract between the parties which included an agreement to arbitrate because Redwine was aware of the previous terms on which Predator offered to perform the work.